**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| CONSUMERS INSURANCE USA, INC., )<br>)<br>Plaintiff,        )<br>)<br>vs.                              )<br>)<br>MICHAEL R. DAVIS and IDA DAVIS,  )<br>)<br>Defendants.    ) | Case No. 09-3164-CV-S-GAF |

## ORDER

Presently before the Court are Plaintiff Consumers Insurance USA, Inc.'s ("Plaintiff" or "Consumers") Motion for Summary Judgment and Defendants Michael R. Davis and Ida Davis's (collectively "Defendants") Motion for Summary Judgment. (Doc. ##15, 18). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED**.

## DISCUSSION

**I.    FACTS**

The facts in this case are not in dispute. Defendants have admitted to and agreed with all portions of Plaintiff's Statement of Uncontroverted Facts, Paragraphs one (1) through twenty-four (24) of Plaintiff's Suggestions in Support of Motion for Summary Judgment. (Doc. #17, p. 5). Defendants also submitted six (6) additional facts they believed to be uncontroverted. *Id.* at 5-6. Of those six (6) additional facts, Plaintiff admitted and agree to facts one (1) through four (4). (Doc. #23). Accordingly, the Court set forth the facts agree to by the parties:

1

1. On or about April 18, 2009, Michael and Ida Davis filed a Petition in the Circuit Court of Green County, Missouri, bearing Cause [sic] No. 0831-CV04908 ("Underlying action"), naming William F. Schroeder and Sell-Ur-Ride, LLC as defendants.

2. In the Petition, Michael Davis seeks damages for personal injuries allegedly sustained in a March 2008 accident and Ida Davis, Michael R. Davis's wife, seeks damages for loss of consortium arising out of the injuries sustained by her husband.

3. In the Underlying action, it is alleged that on March 20, 2008, William F. Schroeder, while in the course and scope of his employment with Sell-Ur-Ride, LLC and in furtherance of Sell-Ur-Ride, LLC's business interest, was operating a vehicle that struck the motorcycle being operated by Michael Davis.

4. At the time of the accident, William F. Schroeder, the owner of Sell-Ur-Ride, was driving a vehicle for Sell-Ur-Ride, LLC to a body shop to be painted.

5. On or about February 4, 2009, a Second Amended Petition was filed in the Underlying action adding additional claims and adding William A. Schroeder as a defendant in the Underlying action.

6. In Count I of the Second Amended Petition, Michael Davis sought damages from William F. Schroeder under a negligence theory, claiming that William F. Schroeder was negligent in failing to keep a careful lookout; failing to stop, swerve or slow down; improper lane usage; and failure to yield.

7. In Count II, Ida Davis sought damages against Defendant William F. Schroeder for

her alleged loss of consortium based on the negligence alleged in Count I.

8. In Count III, Michael Davis sought damages against defendant Sell-Ur-Ride, LLC under a vicarious liability theory based on the acts of William F. Schroeder in the operation of the vehicle.

9. In Count IV of the Second Amended Petition, Ida Davis seeks damages for her claim of loss of consortium from defendant Sell-Ur-Ride, LLC under a vicarious theory based on the acts of William Schroeder in the operation of the vehicle.

10. In Court V, Michael Davis sought damages against defendant William A. Schroeder under a negligent supervision theory, alleging that William A. Schroeder was negligent in failing to monitor William F. Schroeder; failing to require medical clearance before allowing William F. Schroeder to operate motor vehicles in the course of performing tasks for Sell-Ur-Ride, LLC; failing to supervise William F. Schroeder in the performance of certain tasks involving motor vehicles; and directing William F. Schroeder to perform certain tasks for Sell-Ur-Ride, LLC.

11. In Count VI of the Second Amended Petition, Ida Davis seeks damages for her loss of consortium claim from defendant William A. Schroeder incorporating the allegations contained in the prior counts as a basis for her claim against William A. Schroeder.

12. Consumers issued an Auto Dealer Policy, Policy No. AD 28797689-1 ("Policy") to William Schroeder d/b/a Moms Motors, effective 6/6/2007 to 6/6/2008.

13. Sell-Ur-Ride, LLC was added as a named insured by an Auto Dealer Endorsement to the Policy with an effective date of August 9, 2007, and the Auto Dealer

Endorsement to the Policy with an effective date of August 9, 2007, listed William F. Schroeder as a driver in the Drivers Schedule.

14. Consumers provided a defense to William F. Schroeder, Sell-Ur-Ride, LLC and William A. Schroeder in the Underlying action.

15. A settlement was reached in the Underlying action and as part of the settlement, the parties in the Underlying action and Consumers entered into a Settlement Agreement and Contract to Limit Recovery Pursuant to § 537.065.

16. Consumers contends that the Limit of Liability for liability coverage under the Policy for the Claims asserted in the Second Amended Petition in the Underlying action is $100,000.00 each per accident limit based on the language of the Policy, including the insuring agreements, the Limit of Insurance provision, policy conditions, policy definitions, and declarations.

17. Michael R. Davis and Ida Davis claim that the Policy provides liability coverage in the amount of $400,000.00 for claims asserted in the Second Amended Petition in the Underlying action.

18. Consumers has tendered and paid the $100,000.00 it believes is the Limit of Liability for liability coverage under the insurance policy to Michael R. Davis and Ida Davis pursuant to the terms of the Settlement Agreement and Contract to Limit Recovery Pursuant to § 537.065.

19. In the Settlement Agreement and Contract to Limit Recovery pursuant to § 537.065, Consumers, Michael R. Davis and Ida Davis agreed to litigate in a declaratory judgment action whether the Policy provides liability coverage in addition to the

$100,000.00 previously paid by consumers.

20. The Auto Dealer Endorsement to the Policy with an effective date of August 9, 2007, includes the symbol "21," which is described in the Policy as an "auto" for the liability coverage for "COVERED AUTOS" under the "Garage Coverage" form.

21. The following provisions are contained in Section II – Liability Coverage of the Policy:

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> **1. "Garage Operations" – Other than Covered "Autos"**
>
> **a.** We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which the insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".
>
> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – Garage Operations – Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.
>
> \* \* \*
>
> **2. "Garage Operations" – Covered "Autos"**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership,

5

maintenance or use of covered "autos".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is cause by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Out duty to defend or settle ends when the Liability Coverage Limit of Insurance – Garage Operations – Covered "Autos" has been exhausted by payment of judgments or settlements.

22. The policy contains the following limits of liability section as amended by Endorsement CA 00 35 12 88, entitled CHANGES IN GARAGE COVERAGE FORM – LIMITS OF INSURANCE:

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM

The LIMIT OF INSURANCE provision in Section II – LIABILITY COVERAGE is replaced by the following:

**C. AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS' – OTHER THAN "AUTO"**

For "garage operations" other than the ownership, maintenance or use of covered "autos," the following applies:

Regardless of the number of "insureds," claims made or "suits" brought or persons or organizations making claims or bringing "suits," the most we will

pay for the sum of all damages involving "garage operations" other than "auto" is the Aggregate Limit of Insurance – "Garage Operations" – Other Than "Auto" for Liability Coverage shown in the Declarations.

Damages payable under the Aggregate Limit of Insurance – "Garage Operations" – Other Than "Auto" consist of damages resulting from "garage operations," other than the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos," including the following coverages, if provided by endorsement:

**1.** "personal injury" liability coverage;

**2.** "advertising injury" liability coverage;

**3.** host liquor liability coverage;

**4.** fire legal liability coverage;

**5.** incidental medical malpractice liability coverage;

**6.** non-owned watercraft coverage;

**7.** broad form products coverage.

Damages payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than "Auto" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" – "Auto".

Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than "Auto" for Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

The Aggregate Limit of Insurance – "Garage Operations" – Other Than "Auto" applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for the additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Aggregate Limit of Insurance – "Garage

Operations" – Other Than "Auto."

**D.** **LIMIT OF INSURANCE – "GARAGE OPERATIONS" - "AUTO"**

For "accidents" resulting from "garage operations" involving the ownership, maintenance or use of covered "autos," the following applies:

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" involving an "auto" is the Each "Accident" Limit of Insurance – "Garage Operations" – "Auto" for Liability Coverage shown in the Declarations.

Damages payable under the Each "Accident" Limit of Insurance – "Garage Operations" - "Auto" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other than "Auto."

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

23. The Policy provides in Section V – Garage Conditions that the following conditions apply in addition to the Common Policy Conditions:

   **8.** **Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over the Coverage Form.

24. The Policy includes in Section VI – DEFINITIONS the following definitions:

   **SECTION VI – DEFINITIONS**

   **A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or property damage".

   **B.** "Auto" means a land motor vehicle, "trailer" or semitrailer.

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

\* \* \*

**H.** "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

**I.** "Insured" means any person or organization qualifying as an insured in the Who Is and Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage against whom a claim or "suit" is brought.

25. The Policy Declaration lists the applicable policy limits as follows:

| Each 'Accident' 'Garage Operations' | | Aggregate 'Garage Operations' |
|---|---|---|
| 'Auto' Only | Other Than 'Auto' Only | Other Than 'Auto' Only |
| $100,000 | $100,000 | $300,000 |

(Doc. #16, pg. 1-9).

Defendants submitted the following relevant, additional uncontroverted facts:

26. William A. Schroeder was an employee of Sell-Ur-Ride, LLC on the date March 20, 2008.

27. William A. Schroeder was responsible for the day-to-day operation of the business on March 20, 2008.

28. William A. Schroeder asked William F. Schroeder to drive the vehicle that was involved in the accident to the body shop.

(Doc. #17, p. 6). Finally, Defendants allege William F. Schroeder suffered from "transient global

amnesia" on the day of the underlying accident after having been diagnosed with the condition during the 1980's. *Id.*

## II. LEGAL STANDARDS

Fed. R. Civ. P. 56 addresses motions for summary judgment. Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). Insurance policy interpretation and construction, including the determination of whether ambiguities exist, is a matter of law and, therefore, is amenable to summary judgment. *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991); *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 757 (Mo. Ct. App. 2002).

## III. ANALYSIS

### A. Choice of Law

In a diversity case, the Court applies Missouri's choice of law principals. *See Highwoods Props., Inc. v. Executive Risk Indem., Co.*, 407 F.3d 917 (8th Cir. 2005). Under Missouri law, the most significant relationship test applies to determine the applicable law in contract cases, including those involving the interpretation and construction of insurance contracts. *Superior Equip. Co. v. Maryland Cas. Co.*, 986 S.W.2d 477, 480 (Mo. Ct. App. 1998).

The parties do not dispute that under the most significant relationship test, Missouri law should apply to this case. Thus, the Court analyzes the parties' Motions under Missouri law.

**B.      General Law Regarding Insurance Policy Construction**

"Rules governing the interpretation of insurance policies are well settled." *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1999). A court must give the language of an insurance contract "its plain meaning." *Id.* "The plain or ordinary meaning is the meaning that the average layperson would understand" when purchasing the policy. *Id.* Construction is unnecessary where a contract provision is clear and unambiguous. *Id.* Courts may not create ambiguities to distort the language of an unambiguous policy. *Id.* An ambiguity arises when there is "duplicity, indistinctness or uncertainty in the meaning of the words used in the insurance policy." *Tapley*, 91 S.W.3d at 757. Ambiguities in an insurance policy are "construed against the insurer because insurance is designed to furnish, not defeat, protection to the insured and the insurance company is in the best position to remove ambiguity from a contract." *Id.*

**C.      Coverage for Claims Made in the Underlying Action**

Neither party disputes that Section II(A)(2), captioned **"'Garage Operations' – Covered 'Autos'"**,[1] applies and provides coverage in this case. Therefore, Plaintiff has already tendered $100,000.00, the limit of liability under Section II(A)(2), to Defendants.

The main point of contention between the parties is whether the Policy provides additional coverage under Section II(A)(1), captioned "**Garage Operations – Other than Covered Autos**."

---

[1]In the Policy, certain terms, such as "garage operations," "autos," and "accident," are placed within quotation marks to denote they are specifically defined terms within the Policy. For the sake of simplicity and readability, the Court will hereafter omit internal quotation marks around such terms where appropriate.

Defendants contend that Section II(A)(1) provides coverage for their claims that arise from and relate to the managerial acts of William A. Schroeder, manager of Sell-Ur-Ride, and his negligent supervision of Sell-Ur-Ride employee William F. Schroeder. Simplified, Defendants argue their claims that William A. Schroeder was negligent in failing to (1) monitor William F. Schroeder; (2) require medical clearance before allowing him to operate motor vehicles on behalf of Sell-Ur-Ride; and (3) properly supervise William F. Schroeder when performing tasks involving motor vehicles are claims involving "Garage Operations" that are "necessary or incidental to a garage business" and are independent of or divisible from the use of a motor vehicle. Plaintiff disagrees with this interpretation, arguing that such acts directly relate to the use, ownership, or maintenance of automobiles, thus, making Section II(A)(2) the exclusive Policy provision that provides coverage.

Missouri courts have been divided on cases with facts closely resembling those here. In *Bowan v. Gen. Sec. Indem. Co. of Ariz.*, 174 S.W.3d 1 (Mo. Ct. App. 2005), the Missouri Court of Appeals, Eastern District, concluded that claims relating to injuries a plaintiff sustained after an EMT failed to properly secure the plaintiff in the vehicle the EMT was operating were only "incidentally" related to the operation of the vehicle and, thus, an exclusion that excluded coverage for injuries arising from the use, ownership, or maintenance of vehicles did not apply. The court largely based its decision on its prior case of *Centermark Props., Inc. v. Home Indem. Co.*, 897 S.W.2d 98 (Mo. Ct. App. 1995), a case again involving facts similar to those here. In *Centermark*, the Missouri Court of Appeals, Eastern Division, determined that a policy exclusion for acts arising from the ownership, maintenance, operation, or use of an automobile did not apply when a police officer sued Centermark and a security officer it employed after his vehicle was struck by a vehicle owned by Centermark but driven by an unauthorized third person. *Centermark*, 897 S.W.2d at 99-

101. More specifically, the court determined that Centermark's failure to "comply with set procedures for apprehending, subduing, and controlling third parties and persons suspected of criminal activity" and its failure "to have proper and adequate hiring practices and training policies and programs for its security officers," gave rise to causes of action that "appear independent of ownership, maintenance, operation, or use of an automobile." *Id.* at 101.

On the other hand, the Missouri Court of Appeals, Western District, has used the same general language, such as "incidentally related to," to arrive at a completely different result. For instance, in *Am. States Ins. Co. v. Porterfield*, 844 S.W.2d 13 (Mo. Ct. App. 1992), the Missouri Court of Appeals, Western District, stated, "several jurisdictions, including Missouri, have held that acts such as negligent entrustment, negligent hiring, negligent supervision and training are merely incidental to the ownership, operation or use of the vehicle involved in the accident and, therefore, are not covered because of exclusionary provisions." *Porterfield*, 844 S.W.2d at 15. In *Porterfield*, one of Porterfield's employees was pulling a trailer with a truck, and the trailer became unhitched while driving, injuring the plaintiff. *Id*. at 14. The plaintiff sued Porterfield for negligent supervision of his employees when hitching the trailer, arguing such claims were not excluded by an automobile exclusion contained within Porterfield's insurance policy because they were independent of the use, ownership, and maintenance of the truck. *Id.* at 15. The court disagreed, finding "the injuries arose out of the use of the truck and not from negligent supervision." *Id.* at 16.

Here, the Court finds the circumstances presented and the court's reasoning in *Bowen* and *Centermark* to be more analogous to this claim. Defendants' claims of negligence for failure to monitor William F. Schroeder; failure to require medical clearance before allowing him to operate motor vehicles for Sell-Ur-Ride; and for directing William F. Schroeder to perform certain tasks for

13

Sell-Ur-Ride are claims separate and independent from claims that arise from Sell-Ur-Ride's use, ownership, or maintenance of "covered autos." These claims arise from allegedly negligent managerial decisions, which fall squarely within "operations necessary or incidental to garage business." For instance, to establish their claim of negligence against William A. Schroeder for his alleged failure to require medical clearance for William F. Schroeder, who Defendants allege suffered from "known mental fugues," before allowing him to operate motor vehicles on behalf of Sell-Ur-Ride, they must demonstrate: (1) William A. Schroeder had a duty to use ordinary care to supervise, monitor, or train William F. Schroeder; (2) a breach of that duty; (3) that the breach caused Defendants injury; and (4) damages from the breach. *See Brown v. Bailey*, 210 S.W.2d 397, 407 (Mo. Ct. App. 2006). While William A. Schroeder's decision to allow William F. Schroeder to operate a vehicle before the allegedly necessary medical evaluation contemplates "use" of a "covered auto" in the future, such decision, a managerial act, does not involve the actual use, ownership, or maintenance of any vehicle. Therefore, Section II(A)(1) does provide coverage for at least some of Defendants' claims.

**D.       Applicable Amount of Coverage Provided Under Section II(A)(1)**

Having determined that the Policy provides coverage under Section II(A)(1), the Court must determine the limits of liability under that provision. Defendants argue the "Aggregate Garage Operations - Other Than Auto" limitation of $300,000.00 should apply. Plaintiff argues the "Each Accident Garage Operations - Other Than Auto" limitation of $100,000.00 should apply.

The Policy contains the following relevant limits of liability language, as amended by Endorsement CA 00 35 12 88, entitled "CHANGES IN GARAGE COVERAGE FORM – LIMITS OF INSURANCE":

## C. AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN "AUTO"

> \* \* \*
>
> Regardless of the number of "insureds," claims made or "suits" brought or persons or organizations making claims or bringing "suits," the most we will pay for the sum of all damages involving "garage operations" other than "auto" is the Aggregate Limit of Insurance – "Garage Operations" – Other Than "Auto" for Liability Coverage shown in the Declarations.
>
> \* \* \*
>
> Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance – "Garage Operations" – Other than "Auto" for Liability Coverage shown in the Declarations.

Defendants contend that the two paragraphs of the Policy quoted directly above, create an ambiguity as to the appropriate limitation of liability. Defendants believe that the first paragraph listed above states that the appropriate limitation amount is $300,000.00 (i.e., the Aggregate Limit of Insurance stated in the Declarations for liability arising from "Garage Operations – Other Than Auto"), and then the second paragraph strips away this limit to reveal a new coverage limit for damages "resulting from any one accident" of $100,000.00 (i.e., the "Each Accident Limit of Insurance – Garage Operations – Other Than Auto" amount stated in the Declarations). Defendants argue that this amounts to dual language that creates "duplicity in the insurance contract."

An ambiguity exists where there "is duplicity, indistinctness, or uncertainty in the meaning" of the language in the policy." *Peters v. Employers Mut. Cass. Co.*, 853 S.W.2d 300, 302 (Mo. 1993). The entire insurance policy must be viewed as a whole, and a court should not read specific provision of a policy in isolation. *See Tuttle v. Muenks*, 21 S.W.3d 6,11 (Mo. Ct. App. 2000).

Here, viewing the Policy as a whole, there is no ambiguity as to the proper limits of liability.

15

Reading only the two provision quoted above closely leads to a determination that no ambiguity exists. The first paragraph states that the absolute most Plaintiff will pay under the agreement, regardless of the number of claims, suits, insured, etc., is the aggregate limit stated in the Declarations, which is $300,000.00. The second paragraph does not disturb the total aggregate limitation of liability but rather clarifies that the most Plaintiff will pay for damages "resulting from any one accident" is the amount stated in the Declarations for "Each Accident," which is $100,000.00. To read the first paragraph's language "[r]egardless of the number of insureds, claims made or suits brought" to mean that each claim brought has a coverage limit of $300,000.00 would be to ignore the subsequent language in the sentence stating "the most we will pay for the sum of all damages involving garage operations other than auto is the Aggregate Limit" and would render the "Each Accident" limitation stated in the second paragraph and in the Declarations meaningless. When reading the Policy prior to entering into it, a layperson would understand the language in the first paragraph to establish an absolute maximum amount of coverage purchased under the Policy and the language in the second paragraph to establish the absolute maximum amount of coverage provided for each accident.[2]

The lack of ambiguity becomes more obvious when, after reading the provisions discussed above, one examines the Policy Declarations. The parties agree that the following appears in the Declarations:

---

[2] Defendants do not argue that multiple "accidents," as that term is defined within the policy, occurred in this case. *Webster's II New Riverside University Dictionary* (1988), defines "accident" as "[a]n unexpected and undesirable event <a car *accident*> <a skiing *accident*>." Thus, the Court proceeds under the assumption that the only "accident" that occurred here is the motor vehicle accident between Michael R. Davis and William F. Schroeder.

| Each 'Accident' 'Garage Operations' | | Aggregate 'Garage Operations' |
|---|---|---|
| 'Auto' Only | Other Than 'Auto' Only | Other Than 'Auto' Only |
| $100,000 | $100,000 | $300,000 |

Viewing this language, a layperson contemplating purchasing the Policy would understand that the policy provides only $100,000.00 of insurance for "Each Accident" that did not involve the use, ownership, or maintenance of a covered "Auto." Logic would also lead a layperson to realize the absolute maximum amount of coverage Plaintiff would supply during the term of the Policy is $300,000.00. For instance, such a person would understand that if there were four (4) individual accidents, with each accident occurring within the life of the Policy, and each accident resulted in liability of $100,000.00 for a total liability of $400,000.00, the insured would have to bear the $100,000.00 of liability falling above the "Aggregate" limitation alone.

For the reasons explained above, no ambiguity exists as to the correct limit of liability for damages arising from one accident. The Court finds the Policy, when read as a whole, clearly and unambiguously establishes a $100,000.00 limit of liability for each accident attributable to garage operations that do not arise from the use, ownership, or maintenance of a covered auto.

**E.     Stacking**

Finally, it is necessary to determine if coverage under both subsections may be "stacked." "Stacking" is generally understood to refer to "an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy." *Williams v. Silvola*, 234 S.W.3d 396, 398 n. 4 (Mo. Ct. App. 2007). "[I]n the absence of public policy considerations, an insured and an insurer are free to define and limit

coverage by their agreement." *Rodriguez v. Gen Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. 1991). Thus, clear and unambiguous anti-stacking provisions contained within an insurance policy should generally be enforced. *Rodriguez*, 808 S.W.2d at 383-84.

Here, the Policy language does include anti-stacking provisions. Those provisions clearly and unambiguously state that coverage for liability arising from a single "accident" is limited to $100,000.00 and preclude stacking in this case.

The Policy contains the following anti-stacking provision regarding coverage for liability arising from garage operations not involving the use, ownership, or maintenance of covered autos:

> Damages payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than "Auto" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" –"Auto".
>
> Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than "Auto" for Liability Coverage shown in the Declarations.

The Policy contains very similar language regarding coverage for liability arising from garage operations involving the use, ownership, or maintenance of covered autos:

> Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" involving an "auto" is the Each "Accident" Limit of Insurance – "Garage Operations" – "Auto" for Liability Coverage shown in the Declarations.
>
> Damages payable under the Each "Accident" Limit of Insurance – "Garage Operations" - "Auto" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other than "Auto."

Defendants argue that ambiguities exist in the aforementioned anti-stacking provisions in light of the other ambiguity Defendants argue exists regarding the application of the Aggregate Limit of Insurance, discussed above. The Court agrees that if the Aggregate Limit of Insurance

18

applied, the anti-stacking provisions quoted above would be ineffective because they only address the "Each Accident" limits. However, as explained above, there is no such ambiguity, and the "Each Accident" limits do apply here. The anti-stacking provisions clearly and unambiguously state that the most Plaintiff will pay for liability arising from one "accident" is $100,000.00. As mentioned above, there was only one "accident" in this case (i.e., the motor vehicle collision). Because liability arises from only one "accident," the plain language of the Policy limits coverage to $100,000.00.

## CONCLUSION

No genuine issues of fact exist in this case, and disposal of the case upon summary judgment is warranted. Section II, subsections (A)(1) and (2), both provide coverage for Defendants' damages. However, because of the policies unambiguous limitation and anti-stacking provisions, insurance coverage is limited to the amount of $100,000.00. For these reasons and those set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

                                                  s/ Gary A. Fenner
                                                  Gary A. Fenner, Judge
                                                  United States District Court

DATED: **April 12, 2010**